IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

CHRISTIE BEASLEY, individually and
on behalf of her son, WESLEY BEASLEY                                          PLAINTIFFS

VS.                                                                    NO. 1:04CV74-D-D

BENTON COUNTY, MISSISSIPPI,
BENTON COUNTY SHERIFF'S
DEPARTMENT, BENTON COUNTY SHERIFF
and JEFF BEASLEY, individually                                                DEFENDANTS

OPINION GRANTING MOTION FOR SUMMARY JUDGMENT

Presently before the Court is the Defendants' motion for summary judgment. Upon due consideration, the Court finds that the motion shall be granted.

*A. Factual Background*

The Plaintiffs initiated this civil rights action seeking damages pursuant to 42 U.S.C. § 1983 as well as under state law. The Plaintiffs' claims arise out of a domestic violence incident that occurred on August 22, 2003. The marriage of Plaintiff Christie Beasley and Jeff Beasley produced two children Wesley and Sydney. After twenty-one years of marriage, due to Jeff's mistreatment, Christie moved out of the marital home in July 2003. Sydney went with his mother but Wesley continued to live with Jeff.

On August 22, 2003, Christie's sister, Lisa Bolden, took Sydney to school because Christie had a doctor's appointment. Sydney was scheduled to go to his father's house after school. On the way to school, Bolden drove by Jeff's house to tell him of Sydney's planned arrival or leave a note to that effect. She passed Jeff traveling in the opposite direction but Bolden continued on to Jeff's house. When she arrived she saw a pile of Wesley's belongings in the driveway. Bolden called Christie, informed her about the pile of property and warned her that Jeff was headed in her

direction. Bolden was fearful that Jeff may harm Christie and advised her to get some help when retrieving Wesley's property.

Christie went to the sheriff's office in Benton County inquiring about a restraining order where it was explained that she could not obtain one without a specific threat. However, a County employee suggested that Christie talk to the Sheriff of Benton County, Arnie McMullen. Christie asked the Sheriff to accompany her to Jeff's home to recover Wesley's property because she was afraid.[1] Missy Campbell, an off-duty dispatcher and Christie's distant relative, was also present at the Sheriff's office on this day and offered to go with Christie and the Sheriff to help retrieve the property.

The Sheriff radioed Deputy Danny Joe Smith with instructions to meet and accompany them to Jeff's residence. Campbell rode with Christie in Christie's truck to Jeff's home. Campbell told the Sheriff that if Jeff was home that she and Christie would not stop. When they passed Jeff's house, he was home so they drove past and turned around. On their way back by the house they saw the Sheriff and Deputy Smith were there, so Campbell and Christie stopped. As they pulled into the driveway, Campbell was taking pictures which apparently incited Jeff and he cussed at her. Frightened by Jeff's shouting, Christie backed out of the driveway and left.

Shortly after they left, the Sheriff called Campbell telling them to return and pick up the property because Jeff did not want it in the driveway. Campbell told the Sheriff that Christie was scared. The Sheriff spoke to Christie and assured her that he would protect her and not let Jeff do anything. With the Sheriff's reassurance, Christie and Campbell returned to Jeff's residence and

---

[1] In deposition testimony the Sheriff acknowledges that Christie "was afraid to go" to Jeff's house.

backed her truck in the driveway near the pile of property. The Sheriff and Deputy Smith were still there in two different vehicles. Deposition testimony indicates that Jeff stood unrestrained between the Deputy and Sheriff, approximately ten feet from the pile of property. Christie exited her vehicle, walked to the pile and bent over to pick up some items turning her back to Jeff. Jeff attacked Christie. He tackled her grabbed her hair, hit and kicked her. The Sheriff, Deputy Smith and Campbell immediately pulled Jeff off of Christie who was on the ground being battered. As a result of the altercation, Deputy Smith bruised his ribs and shoulder but did not seek medical treatment. Christie, on the other hand, had suffered severe bruising and a broken foot. Campbell described Christie's injuries as a boot print in her stomach, knots on her head, hair pulled out and a broken foot.

Immediately following the altercation, Christie and Campbell fled the scene. Shortly thereafter, approximately three or four minutes later, the Sheriff and Deputy Smith departed without arresting Jeff and leaving the property in the driveway. After the Sheriff and Deputy left, Jeff poured gasoline over the property and set it on fire. About twenty or thirty minutes after departing, Deputy Smith and Deputy Robbie Goolsby returned and arrested Jeff for domestic violence.

The Plaintiffs' complaint includes claims for due process and equal protection violations and claims under the Mississippi Tort Claims Act. The Plaintiffs have conceded Jeff Beasley's motion for summary judgment. The Plaintiffs also concede their equal protection claim leaving only a section 1983 substantive due process claim and state law negligence claim.

*B. Standard for Review*

When considering a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325,

106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265, 275 (1986) ("the burden on the moving party may be discharged by 'showing'...that there is an absence of evidence to support the non-moving party's case"). Under Rule 56(e) of the Federal Rules of Civil Procedure, the burden shifts to the non-movant to "go beyond the pleadings and by...affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274. That burden is not discharged by "mere allegations or denials." Fed. R. Civ. P. 56(e). All legitimate factual inferences must be made in favor of the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202, 216 (1986). Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. Before finding that no genuine issue for trial exists, the court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).

*C. Discussion*

1.  Section 1983 Claim

To state a claim under Section 1983 the plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged violation was committed by a person acting under color of state law. Cornish v. Corr. Serv. Corp., 402 F.3d 545, 549 (5th Cir. 2005). There is no question that Christie suffered physical bodily damage which is protected by the Fourteenth Amendment due process clause. Priester v. Lowndes County, Miss., 354

F.3d 414, 421 (5th Cir. 2004). To impute liability to Benton County the Plaintiff must also prove the existence of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 247 (5th Cir. 2003). Whether an individual is an official policymaker is question for the court to be resolved by reference to state law. Id. at 247. In Mississippi, sheriffs are official policy makers with respect to all law enforcement decisions made within their counties. Miss. Code Ann. §§ 19-25-1 et seq.; Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996).

      a. Substantive Due Process

As a general rule, a local government has no duty to protect individuals from violence. Priester, 354 F.3d at 421. There are, however, three exceptions to this general rule: (1) the special relationship exception,(2) the state-created danger exception, and (3) fair attribution standard. Id. at 421-23. Although the Fifth Circuit has never adopted the state-created danger exception, it is under this theory that the Plaintiffs proceed. Beltran v. City of El Paso, Tex., 367 F.3d 299, 307 (5th Cir. 2004) ("this court has consistently refused to recognize a 'state created-danger' theory of § 1983 liability"); cf. Priester, 354 F.3d at 421 (declining to address the issue but stating "we assume that section 1983 liability may arise" under a state created danger theory).

Assuming for the sake of argument that the state-created danger exception is viable, to prevail the Plaintiff must prove not only that the state actors caused or increased the danger to them but also that the state actors were deliberately indifferent. Priester, 354 F.3d at 421. Deliberate indifference may be shown where the state actor both knew of and disregarded an excessive risk to the victim's health and safety. McClendon v. City of Columbia, 305 F.3d 314, 326 n.8 (5th Cir. 2002) (defendants were not deliberately indifferent where detective provided a loaded gun to an

informant and informant later shot the plaintiff with the gun). Deliberate indifference requires more than a showing of negligence or even gross negligence. Lefall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 532 (5th Cir. 1994). Furthermore, "a state actor's failure to alleviate 'a significant risk that he should have perceived but did not,' while 'no cause for condemnation,' does not rise to the level of deliberate indifference." McClendon, 305 F.3d at 326(noting that the detective was informed of a potential threat to safety, but there was no indication that the detective was aware of any violent intentions).

Here, the Plaintiffs argue that Christie would not have returned to Jeff's house if the Sheriff had not assured her safety and that this assurance increased the danger to her safety. Allowing an extremely generous inference, the Court will assume that the first element has been satisfied and the Sheriff increased the risk of danger by persuading Christie to return to the residence. However, even when viewed most favorably, the Plaintiffs cannot establish that the Sheriff was deliberately indifferent.

While the Sheriff acknowledges that Christie was "afraid" of Jeff, even Christie admits that she never told anyone that Jeff had been abusive in the past. In other words, the Sheriff had no knowledge that an excessive risk of violence existed. The Sheriff also recognized that domestic situations can be dangerous. It was for this reason, that Deputy Smith was asked to join them at Jeff's house. But this general acknowledgment does not mean the Sheriff "knew" Jeff was violent. Neither did the Sheriff disregard only the general risk posed by all domestic issues, by encouraging Christie to return after Jeff yelled at her and Campbell. To the contrary, when Christie returned, the Sheriff stood on one side of an unrestrained Jeff and Deputy Smith on the other approximately ten feet from the pile of property. Certainly, in hindsight the Sheriff and Deputy might have chosen to

restrict Jeff's movement and have him stay father away from Christie. But, for good reason, the Court is reluctant to second guess officers' reasonable decisions that do not amount to deliberate indifference. Wagner v. Bay City, Tex., 227 F.3d 316, 321 (5th Cir. 2000) ("we are careful not to engage in second-guessing officers in situations in which they have to make split-second, on-the-scene decisions").

Under the circumstances, the Sheriff's judgment <u>might</u> rise only to the level of mere negligence rather than the higher deliberate indifference standard. County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L. Ed. 2d 1043 (1998) ("liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."). There is simply no evidence that the Sheriff had any knowledge of an excessive risk to Christie's health and safety, or that he disregarded that risk. McClendon, 305 F.3d at 326 ("negligent infliction of harm by a state actor does not rise to the level of a substantive due process violation, regardless of whether the plaintiff's injury was inflicted directly by a state actor or by a third party."). Resultantly, even "if" the state-created danger theory is viable, Christie has failed to prove the Sheriff acted with deliberate indifference. Though sympathetic, the Court finds that summary judgment should be granted as to the Plaintiffs' substantive due process claim.

### b. Failure to Enforce Miss. Code Ann. § 99-3-7(3)(a)

Section 99-3-7(3)(a) provides in part, "[a]ny law enforcement officer shall arrest a person with or without a warrant when he has probable cause to believe that the person has, within twenty-four (24) hours of such arrest, knowingly committed a misdemeanor which is an act of domestic violence . . ." Notwithstanding, "[a] law enforcement officer shall not be held liable in any civil action for . . . failure, in good faith, to make an arrest." Miss. Code Ann. § 99-3-7(7).

In the case sub judice, the Plaintiffs complain that if Jeff had been arrested immediately following the attack he would not have had the opportunity to destroy the pile of personal property. Without doubt, had Jeff been immediately detained there likely would have been no chance for him to burn the property. However, the statute above does not require that an arrest be made immediately. Though Jeff was not arrested until approximately 30 minutes after the attack, Deputy Smith arrested him within the 24 hour period provided in the statute. Hence, there was no failure to arrest only a delay in arresting Jeff.

The Defendants contend that the purpose of the 30 minute delay was to allow Jeff to calm down and minimize the chance for more outbursts. While reasonable in some instances, the Court would not think it advisable to allow a known violent offender an unsupervised "cool off" period following a brutal attack in the presence of law enforcement officers. Nevertheless, the Defendants have not violated the letter of the law. Absent a statutory commandment, Courts will not interpolate a time limit for arrest where a violation is committed in presence of person making an arrest. Alvarez v. U.S., 275 F.2d 299, 302 (5th Cir. 1960); see Lunini v. Grayeb, 395 F.3d 761, 772 (7th Cir. 2005) ("we decline to take the unprecedented step of implying a general constitutional police duty to arrest certain individuals during a response to an isolated domestic incident."). The arrest was made within a reasonable period of time and in good faith. Therefore, the Court is left with no alternative but to grant summary judgment as to the Plaintiffs' failure to enforce claim.

### c. County Liability

The Plaintiffs argue that after the attack, the County is liable for the Sheriff's failure to "recover or protect" Wesley's property piled in the driveway. The Plaintiffs assert that the Sheriff is a policymaker; that the disputed policy is the customary practice of not arresting domestic violent

offenders immediately but allowing them a cooling off period; that such policy provided Jeff with the opportunity to destroy Wesley's personal property. Viewing the facts and assertions in a light most favorable to the nonmovant, the Plaintiffs have established a prima facie case.

Yet, the Plaintiffs have failed to show that the Defendants acted with deliberate indifference to the known or obvious consequences. See Brown v. Bryan County, Ok., 219 F.3d 450, 457 (5th Cir. 2000) (plaintiff must demonstrate that municipal action was taken with deliberate indifference). Deliberate indifference requires that the Plaintiffs show the County Defendants disregarded a known consequence of their actions. Id. at 457. As is the case here, "a showing of simple or even heightened negligence will not suffice." Id.

As discussed supra, under these facts the Sheriff's actions were at best negligent but, in no event, amount to deliberate indifference. There was no way to predict the events that took place. There was simply no known or obvious risk of harm. Furthermore, while the delayed arrest presented an opportunity for misconduct, the Sheriff's Office was not the "moving force" behind the charred property. Id. Rather, that particular label most appropriately describes Jeff Beasley. Hence, the Plaintiffs are unable to establish at least one essential element of their claim and summary judgment should be granted.

### 2. Mississippi Tort Claims Act

The Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 et seq., provides the exclusive remedy against a governmental entity for acts or omissions which give rise to suit. Watts v. Tang, 828 So.2d 785, 791 (Miss. 2002). The Act further provides that "a governmental entity and its employees acting within the course and scope of their employment duties shall not be liable for any claim . . ."

> [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities related to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any persons not engaged in criminal activity at the time of injury.

Miss. Code Ann. § 11-46-9(1)(c). The police exemption of the MTCA is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties with respect to the victim. Miss. Dept. of Public Safety v. Durn, 861 So.2d 990, 997 (Miss. 2003). Government entities may be held liable only if the complained of conduct amounts to recklessness. Craddock v. Hicks, 314 F. Supp. 2d 648, 654 (N.D. Miss. 2003); Maldanado v Kelly, 768 So.2d 906, 909 (Miss. 2000). While the statute does not provide a definition, the Mississippi Supreme Court describes recklessness as where an "actor has intentionally done an act of unreasonable character in reckless disregard to the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Maldanado, 768 So. 2d at 910.

The Plaintiffs claim that the County, through the acts of its employees, was negligent in protecting Christie or preventing the attack and that the Defendants' inaction amounts to reckless disregard. The Court does not agree. As has been previously stated, neither the Sheriff nor Deputy Smith had any warning that Jeff was potentially violent. Christie even admits that she told no one of Jeff's propensity for violence. Although there is a generally acknowledged increased potential for violence surrounding domestic situations, the Sheriff attempted to lessen the possibility of harm by requiring Deputy Smith's presence. Such a tactic shows that the Sheriff acted in a manner that almost completely negates any liability.

The Plaintiff specifically takes issue with the Sheriff coercing Christie to return to the residence after Jeff shouted at her and with the Sheriff's failure to restrain Jeff prior to the attack. Unfortunately, the Court does not have the benefit of viewing a reenactment of that fateful day.

However, as best as can be determined from the parties' briefs and deposition testimony, even though Jeff was unrestrained, the Sheriff and Deputy Smith were standing on either side of him approximately ten feet from the pile of property. Certainly, if they had to do over, the Defendants would have restricted Jeff's movements entirely. But, other than Jeff's earlier verbal outburst, there was absolutely no indication of a risk that a physical attack was imminent or even likely. Therefore, the Court finds that the County Defendants' actions were not reckless. To the contrary, the Sheriff and Deputy acted in a reasonable manner entirely consistent with the facts that were known to them at the time. At best, their actions <u>might</u> be described as negligent but such a demonstration is not sufficient to overcome immunity provided in section 11-46-9(1)(c). <u>Maldanado</u>, 768 So. 2d at 910 (distinguishing wanton conduct from negligence).

*D. Conclusion*

The Plaintiffs have failed to sustain their burden by demonstrating the existence of a genuine issue of material fact. Specifically, the Plaintiffs have not be able to establish that the County Defendants were anything more than negligent. In contrast, the Defendants have succeeded in demonstrating the absence of a genuine issue of fact as to all the Plaintiffs' claims. Rule 56(c) mandates the entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. Thus, summary judgment shall be granted as to all the Plaintiffs' claims against all Defendants.

SO ORDERED, this the 16th day of June 2005.

                                           /s/ Glen H. Davidson  
                                           Chief Judge